1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN T. ESPRITT, | ) | No. C 03-3675 MMC (PR) |
| | ) | |
| Petitioner, | ) | **ORDER GRANTING MOTION** |
| | ) | **TO SUPPLEMENT; DENYING** |
| v. | ) | **PETITION FOR WRIT OF** |
| | ) | **HABEAS CORPUS** |
| A.K. SCRIBNER, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | (Docket No. 28) |

Petitioner, a California prisoner proceeding pro se, filed the above-entitled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the petition should not be granted based on petitioner's cognizable claims for relief. Respondent has filed an answer and memorandum in support thereof. Petitioner has filed a traverse.[1]

**PROCEDURAL BACKGROUND**

Petitioner was charged with two counts of battery by a prisoner, along with allegations of one prior strike and three prior prison terms. Petitioner waived a jury trial in favor of a bench trial, on the condition that he receive no more than six years in prison if found guilty. On August 16, 2001, the trial court found petitioner guilty on both counts and the prior strike allegation true. The trial court did not reach the prior prison term allegations in light of the six-year maximum provided in the sentencing agreement.

---

[1]Recently, petitioner filed a motion to supplement the petition with additional evidence. Good cause appearing, the motion to supplement is GRANTED.

1

On September 27, 2001, the sentencing date, petitioner filed a motion to substitute counsel pursuant to <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970).  After inquiring into petitioner's reasons for requesting substitution of counsel, as well as questioning petitioner's attorney, Richard West ("West"), the trial court denied the motion.  Petitioner immediately filled out a waiver of counsel form pursuant to <u>Faretta v. California</u>, 422 U.S. 806 (1975), which the trial court accepted; the trial court then granted petitioner's requested 30-day continuance of sentencing.

On October 25, 2001, the trial court rejected petitioner's request for an additional continuance and sentenced him to concurrent terms of three years on the two battery counts, doubled to six years pursuant to California's Three Strikes law.  The California Court of Appeal affirmed, and the Supreme Court of California denied the petition for review.

## FACTUAL BACKGROUND

On the afternoon of September 2, 2000, two inmates began fighting in the C1 yard of Salinas Valley State Prison.  Correctional Officers ("COs") called "yard down," which requires that all inmates assume a prone position on the ground.  At the time the two combatants were escorted off the yard, inmate Lewis Richard ("Richard"), petitioner's then cell-mate, was not in the prone position.  Several COs attempted to handcuff Richard, and ultimately pepper-sprayed him.

With respect to petitioner's conduct, the prosecution called four witnesses: Sergeant Kenneth Prior ("Prior"), and Officers Gregory Espinoza ("Espinoza"), David Wells ("Wells"), and Arthur Valdez ("Valdez").  Prior testified he saw petitioner jump up and run toward him from ten to fifteen feet away.  He attempted to pepper-spray petitioner but the spray failed to discharge.  Prior testified petitioner hit him in the head twice with closed fists.  Espinoza testified he saw petitioner run toward Prior and hit him in the face.  He then saw petitioner throwing punches at Wells with both fists.  Wells testified petitioner lunged toward him and threw several punches at his face and upper body, but that petitioner did not land the punches.  Valdez testified he saw petitioner get up, run toward Prior, and strike him in the

1  face.  He then saw petitioner punch Wells in the face several times.  Each CO testified he was

2  not watching petitioner during the entire incident.

3       The defense called five witnesses: inmate Milton Cummings ("Cummings"), Richard,

4  inmate Alan Fulton Jr. ("Fulton"), Officer Eric Moore ("Moore"), and petitioner himself.

5  West also submitted a medical report by Dr. Parkinson, a Pelican Bay physician, detailing

6  petitioner's physical condition and diagnosis, to which the prosecution stipulated.  Petitioner

7  has cerebral palsy, which affects his ability to walk.

8       Cummings testified he saw petitioner attempt to get up during the CO's altercation

9  with Richard.  He heard petitioner yell something about his "cellie's chronos."[2]  Cummings

10 testified he heard Richard say something regarding his chronos and that he could not be

11 handcuffed in the back.  When petitioner tried to get up to say something about Richard,

12 Cummings saw a "swarm" of COs "bombarding him to the ground."  (Reporter's Transcript

13 ("RT") 299).  He did not see petitioner attempt to hit a CO.

14      Richard testified he tried to show a CO his chronos, which indicated he could not turn

15 onto his stomach.  During his altercation with the COs, he heard petitioner ask them what

16 they were doing.  Petitioner told the COs that Richard had chronos in his hands.  Richard

17 testified he did not see what happened to petitioner because he had been pepper-sprayed.

18 Additionally, Richard was asked, "Do you recall Sergeant Prior ever telling you what, if any,

19 injuries he sustained as a result of the injury on the yard?" and Richard replied, "No, no."

20 (RT 318).

21      Fulton testified he saw Richard trying to show the COs his chronos, but they ignored

22 him.  At the time the other inmates were getting up, he saw petitioner get up and tell a CO

23 that Richard had chronos.  Petitioner walked toward Wells, stumbled, and the COs jumped

24 on him.  Fulton testified he did not see petitioner hit anyone.

25      Moore testified he saw petitioner run toward Wells.  He did not see Prior on the yard

26

27      [2]"Chrono" is a prison term for a medical report.

28

3

or petitioner throwing punches at Wells.  He was not watching petitioner throughout the entire incident.

Petitioner testified COs pepper-sprayed Richard as Richard tried to reach into his pocket for his chrono.  Petitioner stood up and told Wells that Richard had a chrono for his back condition.  He testified he stumbled into Wells, after which the COs rushed and pepper-sprayed him.  Petitioner testified he did not see Prior that day.  He denied he hit Wells or ran at the officers.  Petitioner testified, "I can walk around but I have a cane.  I use a cane because I have cerebral palsy on my left leg."  (RT 333).  On cross-examination, he stated, "I don't do running.  I haven't run since 1991."  (RT 334).  He also stated he can get up and walk on his own.  The prosecutor asked, "So all the correctional officers were wrong?"  Petitioner replied, "Yeah."  (RT 337).

In finding petitioner guilty, the trial court noted the COs' testimony was "consistent and believable,"  (RT at 342), and that there was "quite clear testimony" that petitioner came to his feet, attacked Prior, hit him in the face, and then attacked Wells, with neither attack causing serious injury.  (RT 342-43).

Thereafter, at the September 27, 2001 <u>Marsden</u> hearing, petitioner expressed several complaints about West.  First, petitioner stated, several COs had told him there was constant videotaped surveillance of the C yard, where the incident occurred.  He claimed that a videotape of the incident would have corroborated his testimony, but that the prosecution had failed to disclose the tape.  Petitioner explained that he learned of the surveillance on September 20, 2001, after which he sent West a letter informing him of the surveillance and of the names of the COs who could testify about it.  The letter was returned to petitioner marked "attempted[,] not known."  (RT 508).  At the hearing, West said he had not seen the letter previously, although it bore his correct address.

Petitioner also claimed that Prior had made a statement to Richard on September 2, 2001, stating he was not injured during the incident.  Petitioner claimed that he asked West to elicit testimony regarding this statement, but that West refused to do so.  Petitioner also

complained that West should have objected to the prosecutor's question "So all the correctional officers were wrong?"; in petitioner's view, each of the CO's testimony varied from the others, with the result that they could not all be correct. Petitioner stated that, when West did not object at trial, petitioner had attempted to do so on his own, but stopped when West warned him not to raise his own objections. Finally, petitioner claimed West told him his maximum sentence if he waived a jury trial would be six years at fifty percent, when he actually faced a maximum of six years at eighty percent. At the hearing, West denied telling petitioner his six years would be at fifty percent.

The court told petitioner: "[Issues] surrounding incompetency of counsel at trial . . . need to be raised on appeal. What we're here today is for you to tell me . . . if there is any reason that Mr. West is not adequately representing you and cannot adequately represent you at this sentencing here that we have today." (RT 504-05). The court further stated: "I haven't heard anything upon which to bring a finding that your attorney has failed to adequately represent you or is unable or incapable of giving you adequate representation now. So the Marsden motion is denied." (RT 509). As described above, petitioner then filled out a Faretta waiver of counsel, which the court allowed, and, at petitioner's request, granted petitioner a 30-day continuance of sentencing.

At the October 25, 2001 sentencing hearing, petitioner indicated he had not received the probation department's report, at which point the trial court interrupted the proceedings to allow him time to read the report. When the hearing recommenced, petitioner told the court that prison officials had seized his legal materials on October 16, including a new trial motion and "a presentence report by an outside agency." (RT at 754). He requested a continuance, saying he needed time to recover the materials through either the prison appeals process or a habeas petition he had filed with the court that morning. Petitioner stated he wanted the materials in order to file the motion and to utilize the other materials at sentencing. The prosecutor stated she had been advised that petitioner had used the seized materials to "paper up" his cell in violation of prison rules. Petitioner asserted he had been

1   assaulted by a CO in retaliation for proceeding without counsel; he admitted papering up his

2   cell to gain access to medical care, but denied using his legal materials for this purpose.

3   Petitioner stated that the return of his legal materials by way of the prison appeal process or

4   habeas petition would be meaningless without a continuance as he needed the materials at

5   sentencing.  Thereafter, the court denied the request for a continuance and sentenced

6   petitioner.

7        The California Court of Appeal affirmed petitioner's conviction.  Regarding the denial

8   of the continuance, the Court of Appeal found: "The probation report was filed seven days

9   prior to the date originally set for sentencing, and presumably was made available to trial

10  counsel at that time.  In addition, trial counsel's files were turned over to defendant on

11  September 27, 2001, so defendant presumably was given a copy of the probation report at

12  that time."  People v. Espritt, No. H023754, slip op. 1, 5-6 (Cal Ct. App. Jan. 2, 2003)

13  (attached as Respt.'s Ex. J).  The court did not address the issue of the alleged seizure of

14  petitioner's  new trial motion.  Regarding the Marsden motion, the appellate court found the

15  trial court conducted an adequate inquiry into petitioner's motion to substitute counsel.

### DISCUSSION

17  A.    Standard of Review

18        This Court may entertain a petition for a writ of habeas corpus "in behalf of a person

19  in custody pursuant to the judgment of a State court only on the ground that he is in custody

20  in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);

21  Rose v. Hodges, 423 U.S. 19, 21 (1975).

22        A district court may not grant a petition challenging a state conviction or sentence on

23  the basis of a claim that was reviewed on the merits in state court unless the state court's

24  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

25  unreasonable application of, clearly established Federal law, as determined by the Supreme

26  Court of the United States; or (2) resulted in a decision that was based on an unreasonable

27  determination of the facts in light of the evidence presented in the State court proceeding."  28

28

U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Penry v. Johnson</u>, 532 U.S. 782, 796 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

B.   <u>Legal Claims</u>

   1.   <u>Substitution of Counsel</u>

      Petitioner claims the trial court violated his constitutional rights by failing to sufficiently inquire into the reasons for his request for a new attorney.

      In a federal habeas proceeding, the ultimate question on a claim concerning substitution of counsel is whether the trial court's denial of a petitioner's <u>Marsden</u> motion "actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment".  <u>See</u> <u>Schell v. Witek</u>, 218 F.3d 1017, 1026 (9th Cir. 2000).  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his attorney.  <u>See</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 14 (1983).  To compel a criminal defendant to undergo a trial assisted by an attorney with whom he has become embroiled in an "irreconcilable conflict," however, is, in essence, to deprive the defendant of any counsel whatsoever.  <u>See</u> <u>United States v. Moore</u>, 159 F.3d 1154, 1159-60 (9th Cir. 1998) (finding testimony by defendant and counsel evidenced irreconcilable conflict amounting to breakdown of attorney-client relationship).

      When a defendant voices a seemingly substantial complaint about his counsel, a trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction.  <u>Bland v. Cal. Dep't. of Corrs.</u>, 20 F.3d 1469, 1476 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Schell</u>, 218 F.3d 1017.  The inquiry, however, "need only be as comprehensive as the circumstances reasonably would permit."  <u>King v. Rowland</u>, 977 F.2d 1354, 1357 (9th

1   Cir. 1992) (internal quotation and citation omitted) (noting record may demonstrate extensive

2   inquiry was not necessary).  The proper focus of a trial court's inquiry into a motion to

3   substitute counsel "is on the nature and extent of the *conflict* between defendant and counsel,

4   not on whether counsel is legally *competent*."  United States v. Walker, 915 F.2d 480, 483

5   (9th Cir. 1990), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th

6   Cir. 2000) (emphasis in original).  The relevant issue is whether a dispute exists between

7   counsel and petitioner that rises "to the level of an irreconcilable conflict resulting in a total

8   lack of communication and depriving [petitioner] of effective assistance of counsel."  See

9   Bland, 20 F.3d at 1477.

10      Here, the trial court provided petitioner an opportunity to explain his complaints about

11  West, and petitioner took the opportunity to do so.  His complaints centered on three general

12  issues: (1) the alleged exculpatory videotape and the letter petitioner wrote to West about it;

13  (2) West's alleged failure to elicit testimony from Richard and to object to a prosecution

14  question; and (3) West's alleged misrepresentation as to the percentage of petitioner's

15  sentence petitioner actually would serve.

16      As noted, petitioner, at the hearing, claimed West had refused to consult with him

17  regarding the videotape.  The record does not support this allegation.  Although petitioner

18  sent West a letter to inform him about the videotape, the letter was returned to petitioner

19  undelivered.  Given the notations on the envelope, and the absence of any evidence West

20  purposely returned the letter unread, the only reasonable conclusion is that the Postal Service

21  mistakenly failed to properly deliver it.  Petitioner does not allege West had any other reason

22  to know of the videotape's possible existence.  Consequently, petitioner's complaints about

23  the videotape and letter do not demonstrate a conflict between petitioner and West, and the

24  trial court had no reason to further inquire into the matter.

25      Petitioner also claimed that West declined to elicit certain testimony from Richard,

26  and instructed petitioner not to make his own objections to the prosecution's question about

27  whether the COs "were wrong."  These complaints did not evidence a breakdown in

28

8

communication between West and petitioner, but rather that they were in communication and discussed trial strategy. The fact that West made decisions with which petitioner disagreed may be the basis for an argument as to ineffective assistance of counsel, as the trial court noted, but does not evidence a total breakdown in communication or an irreconcilable conflict. Consequently, there was no reason for the court to inquire further into these issues.

Finally, petitioner claimed that West misrepresented the percentage of the sentence petitioner actually would have to serve, and West denied making such a misrepresentation. Even if West had misrepresented the maximum sentence, however, such a mistake by counsel is not evidence of a breakdown in communication or an irreconcilable conflict.

In sum, the trial court inquired into all the complaints petitioner expressed at the hearing. The trial court properly found those complaints concerned "incompetency of counsel at trial" and, as such, "should be raised on appeal." (RT 504.) See Walker, 915 F.2d at 483 (holding proper inquiry on Marsden motion is whether conflict exists, not competency). As nothing petitioner expressed at the hearing suggested an irreconcilable conflict requiring substitution of counsel, the trial court had no reason to inquire further. Consequently, petitioner's constitutional rights were not violated by reason of the manner in which the trial court addressed petitioner's request for substitution of counsel.

2.     Denial of Continuance and Return of Legal Materials

a. Self-representation

Petitioner claims the trial court violated his right to self-representation by failing to grant a second continuance of the sentencing hearing in order that petitioner might obtain the return of his new trial motion and presentence report, and by failing to order prison officials to return those materials to petitioner.[3]

---

[3]Petitioner claims the trial court's failure to grant a continuance was also an "abuse of discretion" and a violation of his right to effective assistance of counsel. An abuse of discretion, without more, does not warrant habeas review of a failure to grant a continuance. See Bennett v. Scroggy, 793 F.2d 772, 774-75 (6th Cir. 1986). Additionally, because petitioner had already waived his right to counsel by the time his legal materials were seized, his right to effective assistance of counsel is not implicated by the denial of the continuance.

1    Although <u>Faretta</u> guarantees the Sixth Amendment's right to self-representation, the

2    Supreme Court has not held that right to include a guarantee of access to legal materials.

3    Under AEDPA, habeas relief is only available for a violation of "clearly established Federal

4    law, as determined by the Supreme Court of the United States."  <u>See</u> 28 U.S.C. § 2254(d).

5    "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's

6    jurisprudence."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).  Petitioner cites no Supreme

7    Court authority, and this Court is aware of none, providing that prison officials violate a

8    defendant's right to self-representation by seizing his legal materials, or that a trial court

9    violates a defendant's right to self-representation by requiring him to proceed to sentencing

10   without his legal materials.[4]  Consequently, habeas relief is not available to petitioner on this

11   claim.

12         b. <u>Due Process</u>

13    Petitioner claims the trial court's failure to order the return of his seized legal

14   materials violated his right to due process.  As discussed, a district court may not grant a

15   habeas petition unless the state court's adjudication of the claim resulted in a decision that

16   was "contrary to" or "involved an unreasonable application of" "clearly established Federal

17   law, as determined by the Supreme Court of the United States."  <u>See</u> 28 U.S.C. § 2254(d);

18   <u>Williams</u>, 529 U.S. at 412-13.  Petitioner cites no Supreme Court authority, and this Court is

19   aware of none, providing that seizure of an incarcerated pro se defendant's legal materials

20   violates that defendant's right to due process.  Absent such Supreme Court precedent,

21   petitioner's claim, that the trial court's failure to order the return of his materials violates due

22   process, will not support habeas relief.  <u>See</u> <u>Stevenson v. Lewis</u>, 384 F.3d 1069, 1071 (9th

23   Cir. 2004) ("If there is no Supreme Court precedent that controls a legal issue raised by a

24   petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable

25

26   _____

27         [4]The Court additionally notes that the Supreme Court, in a related context, recently held that <u>Faretta</u> does not establish a right to law library access or to "any specific legal aid" where a criminal defendant elects to represent himself.  <u>See</u> <u>Kane v. Garcia Espitia</u>, 126 S.Ct. 407, 408 (2005).

28

1  application of, clearly-established federal law.").  Moreover, for the reasons described below,

2  petitioner suffered no prejudice by reason of his not having his legal materials returned to

3  him.

4          Petitioner next claims the trial court's failure to grant a continuance violated his right

5  to due process because it forced him to proceed to sentencing without his legal materials.

6  The denial of a continuance can, in certain circumstances, amount to a violation of due

7  process.  See Ungar v. Sarafite, 376 U.S. 575, 589 (1964) ("There are no mechanical tests for

8  deciding when a denial of a continuance is so arbitrary as to violate due process. The answer

9  must be found in the circumstances present in every case, particularly in the reasons

10  presented to the trial judge at the time the request is denied.").  The improper denial of a

11  requested continuance, however, warrants habeas relief only if there is a showing of actual

12  prejudice to the petitioner's defense resulting from the trial court's refusal to grant a

13  continuance.  See Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997).  Actual

14  prejudice exists if the error had a "substantial and injurious effect or influence" on the

15  outcome of the case.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

16          Here, petitioner told the trial court that he wanted the continuance in order to have

17  time to recover his materials through either the prison appeals process or his recently-filed

18  habeas petition.[5]  Because petitioner fails to indicate how any of the materials would have

19  helped him obtain a lesser sentence, however, petitioner has not established that he suffered

20  any prejudice by reason of their unavailability at the time of sentencing.

21          With respect to the question of a new trial, under California procedural law, a new

22  trial motion in a criminal case must be "made and determined before judgment."  See Cal.

23  Penal Code. § 1182.  Even if it was error to deny a  continuance under the circumstances

24  presented, petitioner, to demonstrate "actual" prejudice, would have to show that any such

25

26          [5]Petitioner's state habeas petition was denied on November 7, 2001 for failure to exhaust
27  administrative remedies.  The record does not reflect the ultimate outcome of petitioner's
    administrative appeals.

28
                                                    11

1  error had a substantial and injurious effect on the outcome of the proceedings.  Petitioner

2  cannot make such a showing, however, because his motion for a new trial lacks merit.[6]

3      In particular, the motion sets forth two claims: (1) that petitioner discovered new

4  exculpatory evidence allegedly not disclosed by the prosecution and (2) that he received

5  ineffective assistance of counsel.  The alleged new evidence consists of a surveillance

6  videotape of the incident and photographs of the CO's injuries, all of which, petitioner

7  claims, would be exculpatory.  Under California law, a new trial is required when new,

8  material evidence is presented that the defendant could not reasonably have discovered and

9  produced at trial.  See Cal. Penal Code § 1181(8).  The evidence must be submitted through

10  "affidavits of the witnesses by whom such evidence is expected to be given."  Id.   Here,

11  however, petitioner's motion contains only his own declaration, in which he states that

12  several COs had told him the yard was under constant videotaped surveillance.  Similarly, he

13  states that the defense asked for, but the prosecution never produced, photographs of the

14  CO's injuries.  Without affidavits from the witnesses by whom the evidence of the videotape

15  and photographs would have been given, petitioner's motion, to the extent such motion was

16  based on newly discovered evidence, would not have been granted.[7]

17      Petitioner's motion for new trial also claims that West provided ineffective assistance,

18  on several grounds.[8]  A claim of ineffective assistance of counsel is cognizable as a claim

19  under the Sixth Amendment's right to counsel, which guarantees not only assistance, but

20  effective assistance, of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To

21  prevail on a Sixth Amendment claim based on ineffectiveness of counsel, petitioner must

22

23    [6]Petitioner has attached a copy of the new trial motion as an exhibit to his traverse

24    [7] Indeed, although not part of the new trial motion, a memorandum, apparently written by a
   prison official and which petitioner has recently requested be added as an exhibit to the instant petition,
25   indicates the yard where the incident occurred is not videotaped.  See Mot. to Supp. Original Pet. with
   Additional Evid. Ex. A ("C1 yard doesn't have video records.").

26    [8] Although the California Court of Appeal rejected petitioner's ineffective assistance claim on
27   appeal, it did not address the specific complaints regarding West that are raised in the motion for new
   trial.  See Respt.'s Ex. J at 11.

28

1   establish two distinct elements.  Id. at 687.  First, petitioner must establish that counsel's

2   performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

3   under prevailing professional norms.  Id. at 687-88.  The relevant inquiry is not what counsel

4   could have done, but, rather, whether counsel's choices were reasonable.  See Babbitt v.

5   Calderon, 151 F.3d at 1173.  Second, petitioner must establish he was prejudiced by

6   counsel's deficient performance, i.e., that "there is a reasonable probability that, but for

7   counsel's unprofessional errors, the result of the proceeding would have been different."

8   Strickland, 466 U.S. at 687, 694.  A reasonable probability is a probability sufficient to

9   undermine confidence in the outcome.  Id. at 694.  A court need not determine whether

10  counsel's performance was deficient before examining the issue of prejudice suffered by the

11  defendant as a result of the alleged deficiencies.  Id. at 697; see Williams v. Calderon, 52

12  F.3d 1465, 1470 & n.3 (9th Cir. 1995) (noting with approval district court's refusal to

13  consider whether counsel's conduct was deficient, once district court had determined

14  petitioner could not establish prejudice).

15          In his new trial motion, petitioner claims West's performance was deficient in

16  advising him about how much time he would have to serve if he received the maximum

17  sentence offered in exchange for waiving his right to a jury trial.  According to petitioner,

18  West advised him that he would have to serve fifty percent of the six-year maximum,

19  whereas he actually faced a term of eighty percent.  When this issue was raised at the

20  Marsden hearing, West denied telling petitioner he would serve fifty percent of his sentence.

21  The trial court made no factual finding as to what advice West gave petitioner.[9]  Even

22  assuming petitioner's recollection on this point is accurate, however, petitioner has not

23  established that he was prejudiced by the advice in question.  To establish prejudice,

24  petitioner would have to show that, but for West's advice, he would not have waived his

25  rights and instead would have insisted on going to trial before a jury.  See Hill v. Lockhart,

26

27          [9]As explained above, the trial court found any such advice to be an issue for appeal, as it pertained to the effectiveness of West's assistance.

28

1   474 U.S. 52, 57-59 (1985) (holding that in order to establish prejudice from counsel's error in

2   advising defendant to accept guilty plea, petitioner must establish that, but for error, he

3   would have insisted on going to trial); Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986)

4   (same).  Petitioner does not allege that he would not have waived his right to a jury trial, or

5   that he would have insisted on proceeding to trial with a jury, had he known that he would

6   have to serve eighty percent, as opposed to fifty percent, of the six-year term.  Consequently,

7   he has not established that any prejudice resulted from the erroneous advice he assertedly

8   received about his potential sentence.

9        The new trial motion also claims West failed to present at trial a statement Prior

10   assertedly made to Richard that Prior had not been injured in the incident.  West, however,

11   did attempt to elicit testimony from Richard regarding the statement, asking, "Do you recall

12   Sergeant Prior ever telling you what, if any, injuries he sustained as a result of the injury on

13   the yard?" Richard replied, "No, no."  (RT 318).  Petitioner does not suggest what else West

14   could have done in light of Richard's denial.  Accordingly, the new trial motion, to the extent

15   based on this asserted deficiency, would have failed.

16        Petitioner's motion also alleges it was unreasonable for West to have Dr. Parkinson

17   write petitioner's medical report.  Petitioner alleges Dr. Parkinson had a conflict of interest

18   because he works for the prison, and had previously "fabricated" a document to petitioner's

19   detriment.  According to petitioner, on April 10, 2001, Dr. Parkinson wrote a chrono that

20   denied petitioner the use of a cane in his cell because petitioner had previously used a cane as

21   a weapon.  On August 15, 2001, the day before petitioner's trial, the prison, according to

22   petitioner, "rescinded" the chrono.  Petitioner, however, has not alleged, let alone

23   demonstrated, any inaccuracies in the report, or that the report was in any way detrimental to

24   the defense.  As a result, regardless of whether West acted reasonably in choosing Dr.

25   Parkinson to write petitioner's medical report, no prejudice to petitioner resulted from that

26   choice.

27        Petitioner claims that West failed to present exculpatory evidence.  The motion for

28

new trial, however, does not specify what evidence West failed to present or how any such failure served to prejudice petitioner.

Finally, the new trial motion claims West failed to subpoena prison medical staff whose post-incident reports state petitioner decontaminated himself after having been pepper-sprayed.  Petitioner alleges "self-decontamination" is impossible and the fact that prison staff said he engaged in such activity is "prima facie evidence of duplicity and a cover-up."  (Pet.'s Ex. C at 4,7).  Whether or not petitioner decontaminated himself had no bearing on any of the issues at trial, however.  West's failure to subpoena an irrelevant incident report was neither unreasonable nor prejudicial.

For the foregoing reasons, petitioner's claims in his new trial motion are lacking in merit.  Consequently, the trial court's failure to continue the sentencing hearing in order that petitioner might retrieve his seized legal materials did not have a substantial and injurious effect on the outcome of the case.  Accordingly, this claim for habeas relief fails for want of prejudice.[10]

///

///

///

_____

[10]Petitioner also claims he had insufficient time to review the probation report.  He does not identify which, if any, federal right was violated in this regard, but, in any event, such claim is not supported by the record.  As described above, when petitioner, at the sentencing hearing, indicated he had not seen the probation report, he was given an opportunity to review it.  Additionally, the California Court of Appeal found petitioner had seen the probation report earlier.  In that regard, the Court of Appeal noted: "The probation report was filed seven days prior to the date originally set for sentencing, and presumably was made available to trial counsel at that time.  In addition, trial counsel's files were turned over to defendant on September 27, 2001, so defendant presumably was given a copy of the probation report at that time."  (Respt's. Ex. J at 5-6).  AEDPA requires a district court to presume the correctness of this factual finding by the state court, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Petitioner presents no evidence to rebut this finding other than his own contention that he did not receive the probation report, a contention the state court rejected.  Consequently, this Court defers to the Court of Appeal's finding.  Moreover, petitioner does not indicate how he might have objected to or added to the report had he had more time to review it.  Again, there is no indication that petitioner suffered any prejudice.

1

**CONCLUSION**

2      In light of the foregoing, the petition for a writ of habeas corpus is DENIED.

3      This order terminates Docket No. 28.

4      The Clerk shall close the file and terminate any pending motions.

5      IT IS SO ORDERED.

6 DATED: January 12, 2005

7                           MAXINE M. CHESNEY
                           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28